Before we begin, I will notice that Justice McDade is not physically present here, but she will be participating in the decision in this case. She has the benefit of the brief, so we'll listen to oral argument. This is a matter where the plaintiff, Gloria Ballerini, had filed a complaint as a result of a trip and fall on a bag of mulch that had been on the floor of a Wal-Mart store. The complaint actually had two counts. One was a straight negligence claim and one was a spoilation of evidence claim, which are similar but separate counts and similar causes of action, but yet different. Spoilation of evidence is actually a negligence type claim, but with just different elements. What happened was the defendants had filed a motion for summary judgment, which was granted. The negligence claim was granted with the court finding that the defendants did not have notice of the mulch being on the ground or notice of the dangerous condition. The spoilation of evidence claim was dismissed by the court, claiming that there was an issue with regard to duty by a Wal-Mart. Although they go hand in hand, because without, and it all hinges around the spoilation of evidence regarding video footage and surveillance footage of the area where Ms. Ballerini fell, which was a garden center. And so the elements for spoilation of evidence are duty, breach, causation, and damages. And the causation is that as a result of this material evidence being destroyed, the plaintiff was unable to prove their case, which is sort of proven by the second issue of this case, which is that the negligence claim was dismissed because the plaintiff could not prove, according to the court, notice of the mulch being there. And the plaintiff's argument is that had the videotapes not been destroyed, we would have had evidence that would have proved notice on the part of the defendants. With regard to the spoilation of evidence count, though, the court found that there was no duty on Wal-Mart to preserve this video surveillance footage. And the issues with regard to duty is the duty to preserve the evidence and foreseeability that litigation could arise. And in this particular case, and under Boyd, it's a two-pronged test for the spoilation duty, which is duty to preserve and then also foreseeability that litigation could arise. Under the first prong, which both have to be met, under duty, a defendant or a party has a duty to preserve evidence if it's by agreement, by contract, statute, voluntary undertaking, or special relationship. In our situation, we're arguing that Wal-Mart had a duty to preserve the evidence either by voluntary undertaking or special relationship, and that would meet the first prong of the test under Boyd. The second would be foreseeability that litigation could arise. The second prong, foreseeability, we have a situation where we have a shopper who falls. She reports it to management. She talks to several Wal-Mart employees and reports that she fell in the garden center, that she tripped over mulch, and that she was injured. So with regard to foreseeability, is it material, and is there potential litigation, that argument is clearer than, I think that it's clear that there's foreseeability that there may be litigation. Any manager or loss prevention person working in a retail atmosphere is going to know that if somebody is injured on your property, there may be litigation. At least there's a potential for litigation or some sort of injury claim if someone's injured on your property. And the court did not dismiss or grant the motion for summary judgment based upon foreseeability. They dismissed it, stating that there was no duty. So the plaintiff's argument that there is a duty under voluntary undertaking and then also special relationship. With regard to the special relationship, the case law states that there's a special relationship exists if the party who destroys the evidence has control of the evidence. Well, in this particular case, the only people who had control of the evidence would be Wal-Mart. So there's surveillance equipment. They actually have a loss prevention manager who it's her job to handle and record and keep track of all the surveillance videos and cameras. I think there's testimony that there's several hundred video cameras at this facility. Is there evidence that there's no surveillance cameras in the area of the garden center? No. Where the fall took place? There was surveillance cameras in the garden center. There was a testimony of Rita Perrin, who was loss prevention, that there was not one directly aimed at the mulch. Where the fall took place. But in the general vicinity. So although the actual fall may not have been recorded on tape, we don't know what those videos would have shown. They could have shown other Wal-Mart employees in that area that may have saw the mulch. They may have shown other shoppers who were getting mulch. And perhaps one of those shoppers were the ones that spilled the other bag of mulch. So even though there's not a video camera directly pointed at the mulch, you could get the general area and things and people going in and out of that area. And it would also show the planter after she fell. We don't know what it would show because, again, we don't have those tapes. So you have Wal-Mart that's in control of the evidence, and then also standard is possession and control and notice. So with regard to duty, it's our position that there was a special relationship, that Wal-Mart should have kept and preserved the videotapes, and that they had a duty under the special relationship because they had control of it. Even though there's testimony that it doesn't necessarily show where she fell, we don't know what it shows. It could have given notice. There's testimony of some of the Wal-Mart employees that they had been there, they inspected, they didn't see the mulch. But then there's also testimony that there's some unidentified Wal-Mart employees. In this particular case, we had Tom Neal, who was the co-manager, Susan Eplin, who was the manager of the garden department. But the fall was actually reported to Tom Neal and Susan Eplin by other Wal-Mart employees, who we don't know who they are because there's no record of that, but perhaps if there was a video of these employees coming in and out of the garden area, then they could be deposed and asked what they knew about the mulch with regard to notice. So with regard to the spoilation of evidence count, it's our position that they did have a duty under the special circumstances, an involuntary undertaking, which is not necessarily... Most of the time in involuntary undertaking, you have someone who actually takes the evidence, does something with it, tests it, destroys it, does something. In this particular case, the argument of voluntary undertaking is there was some discussion after the fall that there was video. The plaintiff said something, you know, play the tapes, they'll show what happened. So they have this voluntary undertaking if they in fact have the tapes, which there's testimony that they never really requested, but maybe at some point in time they did actually have the tapes, they were somewhere they were lost. Or, in the alternative, that there's a special relationship, because they do have the control of the videotapes and possession of them. So it's our position that there is a duty on behalf of Wal-Mart, because there is the two-prong test, which is the duty to preserve by special circumstances and special relationship. And then two, there's the issue of foreseeability, which foreseeability would be a question of fact, but a reasonable person, I think it would be foreseeable that if someone is a patron of an establishment and they fall on that property, that it's foreseeable that some claim or some litigation may ensue and they have a right or a responsibility to preserve any material evidence of that. And it's noted in the briefs that there was conversations, it was reported to several Wal-Mart employees, and actually there was testimony that the procedure is that if someone does fall, the manager who it's reported to would ask loss prevention for any tapes that might be relevant to that particular fall or injury or occurrence on the property. Then with regard to duty, like I said, the court had dismissed the case, stating that summary judgment was appropriate because Wal-Mart had no duty to preserve. But then in the second count, they dismissed the actual negligence claim, saying, well, you can't prove notice. Which goes to the actual elements of this correlation of evidence is that, did Wal-Mart have a duty? Yes. Did they breach that duty? Yeah. They did not keep the videotapes, even though it might not directly show the fall, but it's going to show what's going around, what's leading up to it. And then as a result of that, the plaintiff was unable to prove her cause of action, which is clear from the dismissal of that straight negligence count with regard to the issue of notice. If we had the videotapes, they would have been able to show, perhaps, that there was some notice on behalf of Wal-Mart that there was mulch on the floor. Or at least it would lead to other employees who may have been able to testify as to notice, may have shown other patrons there that may have been or could have been identified later. It's a small town. Maybe somebody would recognize somebody on the tape and they could ask them if they had the mulch. But our position is that with regard to the count with regard to negligence and the court's dismissal and motion for summary judgment being granted, saying that we can't prove notice, notice is a question of fact, and there could be some argument that we might be able to prove notice, but with the facts we have, it's a hard argument to make. I'll be honest with you, because we really don't have a lot of evidence that would show notice on behalf of Wal-Mart. And the reason we don't have that evidence and we don't have notice with regard to the negligence count is because they destroyed the evidence that may have shown notice on behalf of Wal-Mart. So just to sum it up, it's our position that not only did the court err with regard to the motion for summary judgment as to negligence, but more importantly to the issue of spoilation of evidence, because that in and of itself is a separate independent cause of action that Ms. Ballarini would have had against Wal-Mart. And although it's a subset of negligence, it's its own cause of action, separate and apart from the regular negligence of duty, breach, causation, and damages. So it's our position that as a result of their destroying the videotapes, our client cannot prove her case, and that the court erred when it granted the motion for summary judgment with regard to spoilation of evidence. Any questions? Thank you. Thank you, counsel. Ms. Dillon. Good afternoon. I'm Elizabeth Dillon, representing Wal-Mart Stores, the defendant in this case. I think you've probably come to the conclusion yourselves that this case doesn't involve requesting any new laws be made. We're simply asking that existing, well-established Illinois law be applied to the facts of this case. I'd like to just address the claims in order and in relevance, in my opinion. The first issue is whether the trial court erred in entering summary judgment in Wal-Mart's favor on the negligence claim. As counsel acknowledged, the trial court found that plaintiff's inability to prove the notice element of her claim would not entitle her to proceed to a jury trial because there would be no evidence to give the jury from which it could find that Wal-Mart had notice of this bag of mulch that was on the floor. I disagree with counsel's concession on mulch, which the trial court also noted in the transcript hearings, that the absence of video footage ruins her case. I don't think that's true at all. There are many cases where notice in slip-and-fall situations is established by non-video surveillance. Many stores do not have video surveillance, and notice is often proved by testimony of witnesses, store employees, the condition of the substance on which the party fell. I'm sure you have seen many cases where evidence of notice is gleaned from other sources and video footage. So I do think, actually, slightly contrary to what has been argued, that there is not an absence of notice evidence. There is actually evidence regarding notice, and I think the evidence that we have that's undisputed negates notice. Specifically, the plaintiff's own testimony, I think, negates the notice element because she herself testified that when she approached the mulch that she was going to purchase, she walked down a left-side aisle and saw no bag of mulch on the ground. She didn't testify to how long exactly she was in the aisle, but based on her testimony, I think it's reasonable to infer she was not there very long. She pulled down a sack of mulch, put it on the ground, turned, and returned the way she came to go ask for assistance from the cashiers to come carry the bag for her. At that point, when she made her turn and began to proceed back, she tripped on a bag of mulch that appeared there. But the plaintiff's own testimony was literally that just moments before, there had not been a bag of mulch there, or at least that she had not seen it. And I think the court could take judicial notice of the fact that a bag of mulch was a large item. She testified to its size, and she testified she didn't see it there. So I think it's very reasonable to infer from the plaintiff's own uncontradicted testimony that the bag wasn't there when she proceeded down the aisle. So the issues she raises regarding when the last inspection might have been made of the area by Walmart employees and what have you, I think the evidence of a true inspection was that there was an inspection at 7 a.m., that no mulch was present. But there isn't evidence of any later inspections, but there's also no clear evidence as to what time the plaintiff's accident occurred. She did say it was in the morning. There is evidence that it was in the morning. She said the store was very quiet. So we don't know. It could be that there was an inspection 30 minutes before the plaintiff walked down that aisle and the bag wasn't there, because her own testimony indicates that the bag was only there momentarily before she tripped on it. So I do think there is evidence on the notice issue here, and I think it negates notice. I do not think video surveillance would prove the plaintiff's claim. In fact, contrary to something she said earlier in her brief, she concedes that the evidence may well negate her claim. The video surveillance may disprove notice. And I think that's an interesting concept that the Boyd Court discusses, which is why Illinois, as opposed to other states like Indiana, does not allow for an evidentiary inference when there's spoliation, because the missing evidence is just as likely to prove or disprove a party's claim. And here that's exactly the situation. So I think if anything, based on the plaintiff's own testimony, there is notice evidence, and the notice element is negated. And that's also corroborated by the testimony of the Walmart employees, none of whom saw a bag of mulch. There is no evidence that mulch was scattered on the ground, which might have indicated the bag had been knocked or kicked by other patrons. I think there is no evidence that anybody saw the mulch on the ground other than the plaintiff, and she saw it right before she fell on it. So I do think there is sufficient notice from which the court could determine that the plaintiff could not establish the notice element of her negligence claim. And there's clearly no evidence that Walmart's employees placed the bag there, and there's no evidence that they had actual knowledge of the bag. So the only concept that is available to plaintiff would be an issue of constructive notice, but there truly is no evidence of even constructive notice based on the plaintiff's own testimony. Turning then to the exfoliation count, which does seem to be the claim that plaintiff is now relying upon. As counsel somewhat acknowledged, there are two prongs under Boyd for establishing a duty to preserve evidence. There is no general duty to preserve evidence. The first prong is the relationship prong, which indicates that a party doesn't generally have a duty to preserve evidence, but if there's a contract or other agreement, a statute, or some special circumstance that gives rise to the duty, it may be implied, including a voluntary undertaking. Now, here counsel has argued that mere possession and control equates to a voluntary undertaking. That's absolutely not true. That's not in the rule that's been announced by any court. Sometimes possession and control are factors in a court's finding a voluntary undertaking, but truly the voluntary undertaking that's at issue is that the party actually did something with the evidence that it had possession and control of. It's not mere possession and control. The trial court found that. He found that the fact that there's a patient in a store and there happens to be video surveillance, which in this case is for the clear purpose of preventing loss. It's not for the primary purpose of capturing accidents. And that's sort of bolstered by the title of the woman who's in charge of the video surveillance, which is Asset Protection Coordinator, and she herself testified the main purpose of the video surveillance cameras is to prevent loss to the store. And the trial court and the Northern District of Illinois in the Welch case found that the mere fact that there's video surveillance in the store does not create a special relationship or circumstance that the Boyd Court requires to impose a duty on that party to preserve the video surveillance. The next issue is the foreseeability of litigation. And again, plaintiff claims that this is a fact issue because it's a reasonable person standard. It has to be foreseeable to a reasonable person that the evidence in question would be relevant and material, actually, material to potential future litigation. So here, I think there are really two prongs under this test because the first issue is, is litigation and the potential for litigation likely or reasonably foreseeable? And then the second aspect is, is the particular evidence in question potentially material to that potential future litigation? So here, when we look at the foreseeability prong, I think, again, some of the most damning evidence to the plaintiff is her own testimony. She testified that when she fell, she then reported the incident. She reported it to a store manager, and when was asked about details about that encounter, she specifically said something about his, she was asked about how he, his appearance was. And she said, essentially, I don't know or I don't recall. I didn't think anything would come of it. And she also said, I didn't think anything happened. So at the time of her injury or her accident, plaintiff didn't think much of it, but she wanted to tell store management about it. I mean, there's a bag of mulch in the aisle, right? It should be cleaned up. It doesn't mean she's going to bring a lawsuit. So she told the manager about it, and at that point, she, her own testimony is that, I didn't think anything would come of this. Then the store manager to whom she spoke also said that when he decides whether or not to create an incident report, he sort of bases it on, A, has the patron indicated an intention to seek medical treatment? Here, the patron did not, in some dispute, Ms. Ballerini did not indicate that she thought she was injured, much less intended to seek medical treatment. And then also, she, there's evidence that she continued her purchase and left the store. So from the eyes of the Walmart employee who took the report of the incident, I don't think it is foreseeable that she was going to sue them. She didn't say, you know, look, I cut my elbow, I cut my leg, or my clothes ripped, or I'm going to go see a doctor. And he has the discretion to, even as far as just making incident or accident reports, decide whether it seems likely the patron is going to bring a claim of any kind. And I think it was reasonable for him, based on Ms. Ballerini's demeanor, to conclude that she wouldn't bring a claim. And in fact, she herself testified that she, from her nursing home experience, would file an incident report for anything, for anything that happened. So in this case, the fact that she did say, I wanted to make a report, doesn't necessarily mean she intended to bring a claim. It didn't necessarily mean she thought she was injured. It literally could have been that it was a customer complaint. You know, you've got some mulch in your aisles. So I think that even given her own testimony about her reasons for wanting to make a report, her past experiences as reporting anything that happens in a nursing home, I think it's reasonable to conclude that, from the undisputed evidence, that Walmart didn't have any reason to believe that she would file suit. And I think a really significant factor in this regard, which isn't highlighted very much in the briefs, is that Ms. Ballerini's injury was probably the best description of a latent injury you can imagine. It was a blood clot that developed, and nothing happened to her for over a month, or approximately a month after her fall. She, you know, never saw medical treatment after the incident. She had some soreness, which absolutely one would expect after falling on a particular part of your body, but she had no reason herself to believe that she'd been permanently injured in any way, and was suddenly overcome by this incident at her husband's eye doctor appointment, and it was discovered that she had a blood clot. But, I mean, if there is a latent injury that one can imagine, I think that's it. So I think, even from the plaintiff's own perspective and her undisputed testimony, I don't think it's reasonable to impose a duty on Walmart to have foreseen litigation, and to, in the Second Congress, foresee whether this video footage that might have existed would be relevant to that. That goes to the undisputed testimony and affidavit of the asset protection coordinator, which is that, as Your Honor noted, there was no camera coverage of the specific area where the fall occurred. And I think that that testimony, although plaintiff has not had a chance to refute it because she does not have the videotapes to watch, I think that it's very reasonable to conclude that that does make sense, because the area where she was was sort of a side aisle with large bags of mulch, which I think we can all agree is probably a low-risk area for shoplifting to occur. I don't think if Walmart's cameras were placed strategically, essentially at cash registers and exits and main traffic areas, to prevent losses in terms of theft, not accidents, it makes sense that there wouldn't be a camera pointed at the end of a mulch aisle or down a side mulch aisle. Thank you. People aren't trying to put mulch in their bags. Pardon? They're not trying to put mulch in their bags. I don't think so. I've never used that much mulch before, but I don't think it's very effective. So I think that we do have unrefuted testimony and an affidavit that says there was no camera coverage of this particular area. So the loss, first, that negates the foreseeability factor as far as the materiality of the evidence that was allegedly spoliated. The next issue is, even if we could get past duty, where's the causation? There really is no causation, because the loss of this video footage does not preclude Plaintiff from proving notice, because it showed nothing. It had no relevant information on it. So I think even if Plaintiff could overcome the duty issues that she has, she could not establish causation, that the erasing of this video footage impacted her case. And in fact, I think it possibly would have absolutely shut down her case. So for these reasons, I ask that you affirm the trial court's summary judgment in both respects. Thank you. Just to clarify, I don't believe it was the testimony of Ms. Valerini that there was not a bag of mulch on the ground when she originally went into the aisle. It was that she didn't see one. There's a big difference. As we all know with shoppers, they can be distracted and they're not necessarily looking at the floor, especially if she's looking for mulch that's higher up. And then with regard to the issue of these videotapes and notice, we're just assuming that, in this particular case, that everyone who's testified and has filed an update, everybody's telling the truth. Well, these are Walmart employees, still employed by Walmart. And it's typically the procedure that if someone reports an incident, that it's documented, a report's done. That wasn't done in this case. The videotapes are usually requested. That wasn't done in this case. And the purpose of the Spoilation of Evidence cause of action is that if there's evidence, we need to preserve it. And when it's not preserved by a party, I think there would be an assumption that if they don't preserve it, there's a reason why they don't preserve it. But if they don't preserve it, then there's a separate cause of action against them for their failure to preserve it or if they're destroying it. So the reason for the cause of action is to allow liability when a party fails to preserve evidence that may or may not prove a cause of action. In this particular case, we have a situation where there's videotapes. There's no reason why they should not have preserved them. If there's video cameras in that area, they should have preserved them. It's a matter of Mr. Neal sending an email to Ms. Eplin saying, please preserve the videotapes, as he had done in prior instances involving people who were injured or incidents or falls and things like that at the Walmart. Because it's a situation that if you have someone who's in charge of and in possession of the surveillance video and something happens, well, we just destroyed it oh well, you couldn't have proved your case anyway. The videotape wouldn't have shown anything. Well, we don't know that because we don't have it because they didn't keep it. So it's not a situation where we just assume everybody's telling the truth and we'll just take your word for it that one, the video cameras would not have shown where she fell. Ms. Eplin said that, but we don't know because we don't have the video surveillance. Maybe there was a camera that would have shown the fall or people going in and out. There's been argument by counsel that the video doesn't show anything. Well, we don't know that because again, we don't have it. And that's the crux of our argument is that it may be speculative because we don't have this evidence. And it's not just videotape. It's any type of evidence that may be destroyed. Otherwise, every potential defendant is just going to destroy all the evidence that they have and say, well, it wouldn't have shown anything anyway. The video wouldn't have shown anything. If we had the break assembly and you had it tested, it wouldn't have shown that it was defective anyway, so we just threw it out. That's why there's a separate cause of action. So when parties do destroy evidence, so cases cannot be proved, that there's a separate cause of action. In this particular case, I think it was an error for the court to dismiss the cause of action for spoliation of evidence based upon duty because there was a duty. They did have control of the video surveillance. And it is foreseeable that there might be potential litigation. It's not a situation where they had no notice of it. This is a situation where someone fell. She immediately went and alerted management to the situation. And she specifically said, I fell really, really hard. I could have been killed. Check the tape. Was Miss Ballerini's testimony. So that would at least put Walmart's managers on notice that it's foreseeable that there might potentially be a claim. Maybe not at that specific moment in time, but if you have an elderly lady who falls on cement in your store and she says, I fell so hard, it's foreseeable that there might be a potential claim later on, even though she's not laying on the floor screaming in pain asking for an ambulance. So with regard to the duty, I do believe they did have a duty because of the special relationship and then also the foreseeability. And as a result of the videos not being preserved, the plaintiff's cause of action for negligence was basically destroyed because it goes to the notice, which is the purpose of spoilation of evidence. So we would ask the court, reverse the lower court's granting of the motion for summary judgment with regard to the spoilation of evidence count. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and the written decision will be issued in due course. And as we stated earlier, Justice McDade will participate fully in this decision. And at this time, we'll take a recess for panel change.